COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TODD JAEL DOTSON, | § | No. 08-23-00315-CR |
| Appellant, | § | Appeal from the |
| v. | § | 187th Judicial District Court |
| THE STATE OF TEXAS, | § | Of Bexar County, Texas |
| Appellee. | § | (TC# 2023CR2674) |

## MEMORANDUM OPINION

Appellant, Todd Jael Dotson, appeals his conviction for the felony offense of assault of his girlfriend, as a second offender, with a repeat offender enhancement allegation. Tex. Penal Code Ann. §§ 22.01(a)(1), (b)(2)(A), (b)(2)(A)(i) (providing in relevant part that assault causing bodily injury is elevated to a third-degree felony if: (1) the offense is committed against a person with whom the defendant has a "dating relationship," as that term is defined by Family Code §71.0021(b), and (2) the defendant has a prior conviction for certain types of dating-violence or family-violence offenses); § 12.42(a).[1] Appellant was indicted with two counts of family violence:

---

[1] This case was transferred from our sister court in Bexar County, Texas pursuant to the Texas Supreme Court's authority under Chapter 73 of the Government Code. *See* Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

Count I occurred on January 9, 2023, and Count II allegedly occurred on January 17, 2023. Appellant was found guilty to Count I only.

In two issues, Appellant asserts (1) the State failed to prove the dating or family relationship to the victims in the charged offense and the underlying prior conviction pursuant to §§ 22.01(b)(2)and 22.01(b)(2)(A)(i), and (2) committed prosecutorial misconduct. We affirm.

## I. BACKGROUND

### A. Factual background

On January 9, 2023, Officer Paul Franco of the San Antonio Police Department was dispatched to an assault regarding a victim and her boyfriend. The victim, Sabrina Olivares, testified the Appellant spit on and slapped her face. Further, when asked regarding the nature of her relationship to Appellant on January 9th, she responded, "[t]hen he was a boyfriend." Ms. Olivares, testifying regarding the January 17th allegation, described Appellant as her ex-boyfriend on that date. During cross examination, she explained she dated Appellant for only two to three months. Moreover, she purchased a $250 gold chain for Appellant; in January she returned Appellant's possessions to him; on January 17th, Appellant grabbed or hit her vaginal area; and Appellant slept in her bed with her.

> The indictment's family violence enhancement allegation described the following:
>
> And before the commission of the offense alleged above, on the 16th day of August, 2010, in Cause No. 2010CR6597W, in Bexar County, Texas, the defendant was convicted of the offense of Assault Fam/House Mem Impede Breathe/Circulat, an offense against a member of the defendant's FAMILY, HOUSEHOLD, OR A PERSON WITH WHOM THE DEFENDANT HAS OR HAD A DATING RELATIONSHIP[.]

Admitted at trial without objection was the "Information" in cause no 2010CR6597W. The information stated Appellant:

2

did intentionally, knowingly, and recklessly cause bodily injury to TAMARA SAYLES, a member of the defendant's FAMILY, HOUSEHOLD, OR A PERSON WITH WHOM THE DEFENDANT HAS OR HAS HAD ADATING A RELATIONSHIP, hereinafter referred to as complainant, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of by APPLYING PRESSURE TO THE THROAT OR NECK . . [.]

Also admitted at trial without objection was the judgment which reflected he pled guilty to Texas Penal Code "22.01(B)" and the offense of "Assault-Family-Choking/Strangu[.]" Further the judgment ordered "Defendant have no harmful or injurious contact with Tamara Sayles." At trial, Ms. Olivares identified "Tamara Sales" as the mother of Appellant's children.[2]

### B. Procedural background

Appellant was found guilty to Count I which occurred on January 9th. Count I was elevated to a third-degree felony based on the existence of a "dating relationship" between Appellant and the complainant coupled with a prior family-violence conviction. Tex. Penal Code Ann. §§22.01(a)(1), (b), (b)(2)(A)(i) (enhancing punishment range from Class A misdemeanor to a third degree if defendant has a prior conviction for certain types of dating-violence or family-violence offenses); *see also* Tex. Fam. Code Ann. § 71.0021(b) (providing applicable statutory definition for "dating relationship"). In addition, Count I was further enhanced by Appellant's 2019 felony conviction for second-degree possession of a controlled substance, penalty group 1, 4 grams to 200 grams. This elevated Appellant's third-degree felony offense to a punishment range for a second-degree felony. Tex. Penal Code Ann. § 12.42(a).

Appellant was sentenced to 11 years in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

---

[2] While the information and judgment reflect the complainant as Tamara Sayles, the record at trial spelled Sayles as Sales. The phonetic spelling of Sayles as Sales was not objected to or an issue in the trial court below, nor was it briefed.

## II.  DISCUSSION

First, Appellant contends the evidence is legally and factually insufficient to support his conviction because the State failed to prove in the charged offense and the underlying prior family-violence conviction the "relationship" requirements pursuant to Texas Family Code §§ 71.0021(b), 71.003, or 71.005. *See* Tex. Penal Code Ann. §§ 22.01(b)(2)(A); (b)(2)(A)(i).

Second, Appellant alleges the State committed prosecutorial misconduct, or in the alternative, the trial court erred in its admission of prejudicial evidence, so his conviction must be reversed.

### A.  Standard of review and applicable law

### (1)  Legal and factual sufficiency

In criminal cases, the legal sufficiency standard articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) is the appropriate standard for a reviewing court to apply in determining whether the evidence is sufficient to support a conviction. *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 319) (finding no meaningful distinction between the legal and factual sufficiency standards and no justification for retaining both standards). When reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict. *Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016). The verdict will be upheld if any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Additionally, we treat circumstantial

evidence as being as probative as direct evidence and the standard of review is therefore the same for both circumstantial and direct evidence. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

In considering the evidence, we keep in mind that the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume that the fact-finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). When considering a claim of evidentiary insufficiency, we must keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented. *See Jones*, 984 S.W.2d at 257 ("The trier of fact is always free to selectively believe all or part of the testimony proffered and introduced by either side."). Further, while jurors may not base their decision on mere speculation or unsupported inferences, they may draw reasonable inferences from the evidence. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). The evidence is sufficient to support a conviction, and thus the jury's verdict is not irrational, if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). When faced with conflicts in the evidence, a reviewing court shall presume that the fact-finder resolved those conflicts in favor of the verdict and defer to that determination. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Further we are not permitted to re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact-finder. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

"[S]ufficency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *See Malik v. State*, 953 S.W.2d 234, 240

5

(Tex. Crim. App. 1997) (en banc); *see also Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018). Therefore, our task is to determine, based on the evidence and reasonable inferences drawn therefrom, whether a rational juror could have found the essential elements of the charged offense beyond a reasonable doubt. *Id.*

Here, Appellant was charged with felony assault causing bodily injury, which was elevated from a Class A misdemeanor to a third-degree felony based on the existence of a "dating relationship" with the victim and a prior conviction for dating-violence assault. Tex. Penal Code Ann. §§ 22.01(a)(1), (b)(2)(A), (b)(2)(A)(i). Section 22.01(b)(2) provides that a person commits a third-degree felony if he: (1) commits bodily injury assault against "a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code"—i.e., a person with whom the defendant has a "dating relationship," a family member, or a member of the defendant's household; and (2) the prosecution proves that the defendant has a previous conviction for one of several enumerated types of offenses, including assaultive offenses, against a person with whom the defendant has a dating relationship, a family member, or a member of the defendant's household. *Id.* §§ 22.01(b)(2)(A), (b)(2)(A)(i). Appellant does not contest the sufficiency of the evidence showing that he assaulted Olivares or that he has a prior conviction for assault of Tamara Sayles; rather, his sole complaint is the evidence is insufficient to show his relationship to the two victims, Olivares and Sayles, met §§ 71.0021(b), 71.003, or 71.005 of the Family Code. Thus, we consider only that statutory element for the charged offense and his underlying 2010 prior conviction.

In defining the offense, Penal Code § 22.01(b)(2) expressly incorporates the definition of "dating relationship" found in Family Code § 71.0021(b). *Id.* § 22.01(b)(2). Because the statute expressly incorporates this definition and it constitutes an element of the offense, it is part of the

6

hypothetically-correct jury charge against which the sufficiency of the evidence must be measured. *Ramjattansingh*, 548 S.W.3d at 546–47 (explaining that statutory allegations are always part of the hypothetically-correct jury charge); *see also Geick v. State*, 349 S.W.3d 542, 547–48 (Tex. Crim. App. 2011) (stating that when pled, a statutory definition becomes an element of the offense which must be proven beyond a reasonable doubt). Section 71.0021(b) states:

> (b) For purposes of this title, "dating relationship" means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of:
>
> (1) the length of the relationship;
>
> (2) the nature of the relationship; and
>
> (3) the frequency and type of interaction between the persons involved in the relationship.

Tex. Fam. Code Ann. § 71.0021(b). Subsection (c) additionally provides that "[a] casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a 'dating relationship' under Subsection (b)." *Id.* § 71.0021(c).

Having set forth the relevant statutory requirements, we now turn to an analysis of the evidence in this case to determine whether his relationship with Olivares and Sayles meets the statutory definition.

### B. Analysis

We conclude the jury could have rationally found beyond a reasonable doubt that the requirements of Family Code §§ 71.0021(b), 71.003 or 71.005 were satisfied for Olivares and Sayles.

### (1) Sabrina Olivares

It was not irrational for the jury to believe Olivares when she testified Appellant was her boyfriend. *Edward v. State*, 635 S.W.3d 649, 657 (Tex. Crim. App. 2021). She further explained by January 17th, Appellant was her "ex" and had been her boyfriend for "2 or 3 months." In addition, she had purchased a necklace for Appellant; they slept in her bed together overnight; she returned his possessions that she had; and while they were alone together in her bedroom he hit or grabbed her in the vaginal area. A review of this evidence shows the length and nature of the relationship particularly through the type of interactions between Appellant and Olivares. This evidence allowed the jury to conclude they had a continuing relationship of an intimate nature which satisfied § 71.0021(b) of the Texas Family Code.

### (2) Tamara Sayles

"To establish a prior conviction for purposes of enhancement, the State must show the existence of a prior conviction and the defendant's link to that conviction." *Brown v. State*, 508 S.W.3d 453, 456 (Tex. App.—Fort Worth 2015, pet. ref'd) (citing *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). "The trier of fact weighs the credibility of each piece of evidence and determines whether the totality of the evidence establishes the existence of the alleged conviction and its link to the defendant beyond a reasonable doubt." *See id.* (citing *Flowers*, 220 S.W.3d at 923). "No specific document or mode of proof is required to prove these two elements." *Flowers v. State*, 220 S.W. 3d 919, 921 (Tex. Crim. App. 2007). The Court of Criminal Appeals likened this process to that of "a jigsaw puzzle where the pieces alone may have little meaning but when put together form a picture showing that the defendant is the person who committed the alleged prior offense." *Id.* (citing *Flowers*, 220 S.W.3d at 923).

Here, Appellant does not contest the admission, authenticity or veracity of the documents associated with cause number 2010CR6597W. Nor does he raise any issue linking him to the conviction either in the trial court or on appeal. Rather, his sole complaint is the State failed to prove his "relationship" with Sayles satisfied §§ 71.0021(b), 71.003 or 71.005 of the Family Code as required by 22.01(b)(2)

First, Olivares stated Tamara Sayles is the mother of Appellant's children. The definition of "family" under § 71.003 includes parents of the same child. Second, Appellant pled guilty to the information which alleged Tamara Sayles was "a member of the defendant's family, household, or a person with whom the defendant has had a dating relationship[.]" A guilty plea is an admission of all the facts alleged in the information. *Beason v. State*, 67 S.W. 96, 99 (Tex. Crim. App. 1902) (citing *Crow v. State*, 6 Tex. 334 (1851); *Doans v. State*, 37 S. W. 751 (Tex. Crim. App. 1896). In addition, the judgment recites Appellant's conviction was for Texas Penal Code "22.01(B)" and the offense of "Assault-Family-Choking/Strangu[.]" Tamara Sayles was identified as an individual that meets the definition under § 71.003 and the judgment reflects the Appellant's conviction was for a family violence assault. We find a rational fact-finder could have found the prior conviction satisfied the requirements of §§ 22.01(b)(2)(A)(i) beyond a reasonable doubt.

We overrule Appellant's first issue.

### (3) Prosecutorial misconduct

In his second issue, Appellant argues the question of whether he grabbed the complainant's "vaginal area" constitutes prosecutorial misconduct and the admission of "clearly prejudicial evidence."

To preserve error in cases involving prosecutorial misconduct, the appellant must have (1) made a timely and specific objection; (2) requested an instruction that the jury disregard the matter

improperly placed before the jury; and (3) moved for a mistrial. *Jimenez v. State*, 240 S.W.3d 384, 402 (Tex. App.—Austin 2007, pet. ref'd). However, in cases where the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," error preservation is not required. *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). The prosecutorial misconduct must have denied the defendant a fair trial. *Id.* "It is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.* (quoting *Darden*, 477 U.S. at 181). Prosecutorial misconduct does "not assume constitutional dimension unless the evidence is 'so insubstantial that (in probability) but for the remarks no conviction would have occurred.'" *Id.* (citations omitted); *Edwards v. Scroggy*, 849 F.2d 204, 211 (5th Cir. 1988). Here, Appellant did not object on the basis of prosecutorial misconduct. Thus, we can consider only whether any prosecutorial misconduct occurred which resulted in a denial of due process and a fair trial.

Appellant points to the record during cross-examination in which the following exchange occurred:

Defense Counsel:   And then what hand does he allegedly grab your vaginal area with?

Olivares:             (No verbal response.)

Defense Counsel:   So he reaches over himself and uses his right hand to grab you?

Olivares:             Yes, this way.

Shortly after this testimony the jury was excused, and the trial court told defense counsel:

> And the other thing that is happening is doors are being opened. I instructed the State not to go into any sexual nature whatsoever. And, Defense, you've already questioned her about his grabbing her vagina.

.          .          .

She did not say her "vagina" or anything of that nature. So doors have been opened and people are asking the Court to close doors that have been opened. She never said that there---

The trial court later stated:

So with regards to the vaginal, I never heard the witness–and if I'm wrong, tell me I'm wrong–I never heard this witness testify on direct examination that he grabbed her vagina. Am I missing that?

.     .     .

All right. So [the] Court doesn't want to hear any more testimony about the vaginal area because that's a violation of the request that the Defense has. So you-all cannot be asking me to tell the State not to bring something up, and then people open the door, and then they want to close the door.

Earlier at trial, Defense Counsel objected to any testimony regarding an alleged sexual assault and referred to a Rule 404 notice that had been previously filed. The trial court sustained the Defense's objection. Our review of the record indicates the phrase "vaginal area" is first mentioned during cross-examination by Defense Counsel. Further, Olivares never testifies to any grabbing of her vaginal area during the State's direct examination.

Clearly the injection of this evidence was the result of Defense Counsel's questioning and not due to any conduct by the State. Inherent to the definition of prosecutorial misconduct is the examination of the alleged wrongful conduct by the prosecutor. *Ex parte Wheeler*, 203 S.W.3d 317, 323–24 (Tex. Crim. App. 2006); *State v. Yetman*, 516 S.W.3d 33, 35 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Ex Parte Roberson*, 455 S.W.3d 257, 260 (Tex. App.—Fort Worth 2015, pet. ref'd), cert. denied, 136 S. Ct. 490 (2015). Appellant's complaint of prosecutorial conduct must fail if he cannot point to any wrongful conduct by the prosecutor.

Intertwined with Appellant's prosecutorial misconduct complaint is an allegation of admission of prejudicial evidence, ostensibly the grabbing of the vaginal area. An appellant's brief

11

must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Here, Appellant's brief does not cite to any standard of review, nor does it conduct any analysis considering case law or how he was harmed by the alleged admission of prejudicial evidence. We therefore conclude he has improperly briefed this issue and waived any error. *Id.* (requiring an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (en banc) (holding appellant waived issue on appeal because he inadequately briefed the issue by failing to address whether the alleged error was harmless).

We overrule Appellant's second issue.

### III. CONCLUSION

For these reasons, we affirm.

YVONNE T. RODRIGUEZ, Chief Justice (Ret.)

August 9, 2024

Before Rodriguez, C.J. (Senior Judge), Palafox, and Soto, JJ.
Rodriguez, C.J. (Ret.) (Sitting by Assignment)

(Do Not Publish)